1. EMINENT DOMAIN—TITLE ACQUIRED—REVERSION.
    Where the city of New York, in the county of Westchester, under Laws 1858, p. 452, c. 291, providing for a public bridge over Harlem river and for the taking of the necessary property for such bridge and its support and for passage to and from the same, took certain lands, the title vested in the municipalities named in fee without any right of reversion in the original owner.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 836.]

2. PUBLIC LANDS—GRANT BY STATE.
    Where a city had occupied certain lands for more than 20 years for a public bridge, under a claim of title thereto, a grant by the state will not be construed to include the same; they being specifically excluded by the terms of the grant.

In the matter of the opening of Jerome avenue from its southerly terminus to the bulkhead line of the Harlem river.   Report modified and confirmed.

Thomas S. Bassford (Ernest Hall and Charles S. Noyes, of counsel), for claimants Campbell.

Ira A. Place (Robert L. Luce, of counsel), for objectors.

William B. Ellison, Corp. Counsel (John P. Dunn and Thomas C. Blake, of counsel), for city of New York.

LEVENTRITT, J.   This proceeding was instituted by the city of New York to acquire title to certain lands for the extension of Jerome avenue to the bulkhead line in the Harlem river.   The commissioners of estimate and assessment found the title to the premises in question to be vested in the city of New York, and made their report accordingly, notwithstanding a claim filed by the heirs of one Duncan Campbell, deceased, based upon an alleged reversion in fee and upon a grant from the state covering premises designated as damage parcels 2, 2-B, and 3, and the claim of the Spuyten Duyvil & Port Morris Railroad Company that the award for damage parcels 1, 2-A, and 4 should have been made to it as owner and not to the city.   These claims of title are brought up for review upon exceptions filed to the report of the commissioners of estimate and assessment and upon objections to its confirmation, for which this motion is made.

The premises embraced in damage parcels 2, 2-B, and 3 were included in descriptions of lands acquired by Duncan Campbell by deeds dated, respectively, December 31, 1822, and July 26, 1831, which conveyed a portion of what was known as "Devoe's Point."   The property

was bounded northerly by a fence; easterly by lands of one Anderson; thence running southerly "into low-water mark in the inlet of bay which comes from the Harlem River up towards the lot of James Morris, Esq.; thence, along the said low-water mark, westerly, round the sedge and the small island of a rock at the extremity of Devoe's Point aforesaid, unto the main Harlem river; thence, along said river at low-water mark, to a point which would be struck by the said first mentioned fence, if the same were continued westerly to low-water mark in said river." In 1858 the Legislature passed "An act for removal of obstructions from the Harlem river and for a free bridge over the same," being chapter 291, p. 452, Laws 1858, whereby the mayor, aldermen, and commonalty of the city of New York and the supervisors of the county of Westchester were "authorized and directed to erect, build and maintain" as therein provided "a public free bridge for passengers, animals and vehicles, over and across the Harlem river, from a point in said city at or near the terminus of the Eighth avenue, not east of the Seventh avenue nor west of the said Eighth avenue, to a point in said county at or near the terminus of the road leading to McComb's dam." The act designated the board of commissioners and provided:

"Sec. 3. Within thirty days after the passage of this act, or as soon thereafter as convenient, the said commissioners shall cause to be prepared and filed in the offices of the clerks of the counties of New York and Westchester respectively, a plan of such bridge and a map of the lands and property necessary for such bridge and its support, and for passage to and from the same; and in case the said commissioners can not obtain a grant and conveyance of such land and property on terms satisfactory to them, it shall be the duty of such commissioners to apply to the supreme court, at a special term thereof, to be held in the said city, for the appointment of five persons to estimate and fix the value of such lands and property, and to report the same to the said court, at a special term thereof, to be held as aforesaid, and upon the confirmation of such report, which shall also contain the names of the owners of such lands and property, if the same can be ascertained by such persons, such lands and property shall vest in and belong to the said mayor, aldermen and commonalty, and the said county of Westchester, for the purposes of this act. * * *"

A map showing the property required was filed, and thereafter condemnation proceedings were instituted to which Duncan Campbell was made a party. The commissioners of estimate and assessment fixed the value of these lands, found and reported Campbell to be the owner in fee thereof, and made the awards to him. The final order, ratifying and confirming the acts and proceedings of the commissioners, provided that, upon the payment of the awards to Campbell, "the said commissioners and their successors shall become entitled to enter upon and take possession of the lands and premises as in said report described and the same shall vest in and belong to the mayor, aldermen, commonalty of the city of New York and to the supervisors of the county of Westchester for the purpose of said act. * * * That the persons who have been made parties to the proceedings aforesaid shall be and are declared to be divested and barred of all right, estate and interest in the premises, lands, rights and property hereinbefore described and set forth." Campbell was paid the amounts awarded to him. A frame trestle structure about 35 feet wide was

built, supported by timber piers about 12 or 15 feet apart, and the bridge was completed and opened to traffic in April, 1861.   Between 1897 and 1900 the bridge structure was removed, and thereafter these proceedings were instituted for the purpose of continuing Jerome avenue to the bulkhead line of the Harlem river.

The claimants contend that the act of 1858 did not authorize the acquisition of the fee of the premises in question; that, at most, a perpetual easement in the lands necessary for the bridge was taken; and that, upon the removal of the bridge, the fee reverted to the original owner and to his heirs.   This contention is unfounded.   The act of 1858 authorized the commissioners to obtain a grant and conveyance of the property required, or, failing in that, to acquire the necessary lands through the medium of condemnation proceedings. It further provided that, upon the confirmation of the report of the commissioners of estimate and assessment, "such lands and property shall vest in and belong to" the mayor, aldermen, and commonalty of the city of New York and the county of Westchester "for the purposes of this act."   The language used is unambiguous and incapable of misconstruction.   The phrase "vest in and belong to" denotes no less an estate than the fee.   But the intention of the Legislature is also shown by the further provisions of section 3 of the act, which reads as follows:

"The provisions of the act entitled 'An act to authorize the formation of railroad corporations' passed March twenty-seventh, eighteen hundred and forty-eight, and all acts amendatory thereof, so far as the same are applicable, and not inconsistent with any of the provisions of this act, shall apply to the proceedings in regard to such lands and property, and all matters relating to such proceedings and such lands and property, and the vesting of title thereto."

The act of 1848, relating to railroad corporations, provided that, after condemnation proceedings, the corporation "shall become entitled to use and occupy" the lands taken during the continuance of the corporation.   Laws 1848, p. 228, c. 140, § 20.   The act of 1850, which was a new general railroad act repealing the act of 1848, provided that, upon confirmation of the report of the commissioners, "the company shall be entitled to enter upon, take possession of and use the said land for the purposes of its incorporation. * * * And all persons who have been made parties to the proceedings shall be divested and barred of all right, estate and interest in such real estate during the corporate existence of the company as aforesaid."   Laws 1850, p. 219, c. 140, § 18.   These provisions are quoted for the purpose of showing their inconsistency with the act of 1858, and are conclusive of the intention of the Legislature in adopting the phraseology "vest in and belong to" to authorize the acquisition of a fee.   It is contended that the expression "for the purpose of this act" indicates a contrary intention.   While this expression suggests the purpose to which the land was to be applied, it could not, in view of the clear language of the act, be held to limit the title to be acquired.   At most, it is a specification of use, not a qualification of title.   Not only would the occupation and use of the land for bridge purposes be inconsistent with any other form of legal title than the fee, but the whole force of the

statute would not have been applied unless a fee was taken. The elaborate briefs of the claimants treat exhaustively of the technical effect of the statute, and present many subtle refinements respecting the precise meaning of its various words and phrases. But the question to be determined is simply: What is the fair and reasonable interpretation of the statute, and what is the effect of the proceedings instituted and completed under it? The general rule undoubtedly is, as the claimants maintain, that, when the language of a statute will bear a construction which will leave the fee in the landowner, that construction will be preferred. Mott v. Eno, 181 N. Y. 346, 74 N. E. 229. And, if the title to the land depends upon presumptions, only an easement will be deemed to be taken. Elliott, Roads & Streets, 227; U. S. v. Harris (U. S.) 1 Sumn. 21, Fed. Cas. No. 15,315; Washington Cemetery v. P. P. & C. I. R. R. Co., 68 N. Y. 591. Here, however, the statute admits of but one construction. The title does not depend upon presumption. If, as it was determined, Duncan Campbell owned the premises in question, the effect of the final order in condemnation proceedings was to vest in the city of New York and the county of Westchester the fee of those premises pursuant to the provisions of the statute.

Certain alleged irregularities in the condemnation proceedings are invoked, as operating to divest the city of the title acquired. Even if there were irregularities in the proceedings, they were waived by Duncan Campbell by accepting, without objection, the awards directed to be paid by the final order of confirmation.

The next contention urged is that Duncan Campbell never owned the fee of the premises; that it was originally vested in the state; that it was never divested until the claimants acquired title by grant from the state in 1881. For two reasons this contention must fail: (1) If the title to these lands was in the state, the direction in the act of 1858 to build and maintain a bridge was, in effect, a dedication for the purposes of the act. Proceedings to condemn were unnecessary. The provisions of the railroad law have no application. Lands necessary for railroad purposes are acquired under permissive legislation, while those obtained under the act of 1858 were acquired pursuant to mandatory legislative direction. (2) If the lands selected by the commissioners included state lands, the latter were by the terms of the act as much dedicated and devoted by the state to the purposes contemplated as though conveyed by grant or appropriated through condemnation proceedings or special legislative enactment. The grant to the claimants in 1881 did not include the premises in question. Irrespective of the fact that, at the time the grant was obtained, the city of New York and the county of Westchester had been in possession of the premises under claim of title founded upon the final order in condemnation proceedings, exclusive of any other right, and the bridge had been open and in use for more than twenty years, and of the fact that the commissioners of the land office were by statute prohibited from interfering with any rights or franchises of the city—the terms of the grant itself specifically excluded the lands in question from the description of the premises conveyed. The language is:

"Containing thirteen acres and 456 thousandths of an acre (1345$6/_{1000}$) exclusive of the land taken for the Central Avenue Bridge and of the land taken for the Spuyten Duyvil and Port Morris Railroad and of the lands taken for 161st street, formerly Cedar street. * * * "

If, as the claimants maintain, the language quoted operates not as an exception, but as an inclusion of the premises in question, it must also be held to include, not only the lands of the railroad company, but the bed of 161st street—a result, aside from the question of validity, never contemplated either by the commissioners of the land office or by the claimants.

It is unnecessary to discuss the remaining contentions urged by the claimants. It may be noted, however, that there is no satisfactory evidence that the premises in question have been abandoned, notwithstanding the destruction of the bridge structure and the building of a new bridge at another point.

The claim for compensation for riparian rights is unsupported. The claim is based upon a right of access to the navigable water of the Harlem river. That right has not been destroyed. On the contrary, the effect of these proceedings is to conserve it to the beneficial enjoyment of the claimants and the public.

The only objection made by the Spuyten Duyvil & Port Morris Railroad Company to the confirmation of the report is that the awards for damage parcels 1, 2-A, and 4 should be made, not to the city, but to the company, and should be subject to its perpetual easement and right to use the lands for railroad purposes. While the company is entitled to the protection of its rights, it is not entitled to the awards, which must necessarily be made to the owner of the fee. It is the fee which has been condemned subject to the easements of the railroad. The company is not the owner of, and does not claim, the fee. The report will be so modified as to subject these awards to the rights of the company to use and occupy for railroad purposes.

As modified, the report of the commissioners will be confirmed.

Report modified, and, as so modified, confirmed.